Dane W. Anderson, Esq.
Nevada Bar No. 6883
Jose A. Tafoya, Esq.
Nevada Bar No. 16011
**WOODBURN AND WEDGE**
6100 Neil Road, Suite 500
Reno, Nevada 89511
Telephone:  775-688-3000
Facsimile:   775-688-3088
danderson@woodburnandwedge.com
jtafoya@woodburnandwedge.com

*Attorneys for Defendant*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| JOHN ILIESCU, JR., AND SONNIA ILIESCU, Trustees of The John Iliescu, Jr. and Sonnia Iliescu 1992 Family Trust Agreement dated January 24, 1992,<br><br>Plaintiffs,<br>v.<br><br>THE REGIONAL TRANSPORTATION COMMISSION OF WASHOE COUNTY, a special unit of the government; and DOES I through X, inclusive,<br><br>Defendants. | Case No.: 3:21-cv-00387-MMD-CLB<br><br>**RTC'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Defendant THE REGIONAL TRANSPORTATION COMMISSION OF WASHOE COUNTY ("RTC") files this motion pursuant to Fed. R. Civ. P. 56 for an order granting RTC summary judgment as to the First and Second Claims for Relief in Plaintiffs' JOHN ILIESCU, JR., AND SONNIA ILIESCU, Trustees of The John Iliescu, Jr. and Sonnia Iliescu 1992 Family Trust Agreement dated January 24, 1992 (collectively referred to as "Iliescu") Complaint..  Both the First Claim For Relief (42 U.S.C. § 1983) – Driveway) and the Second Claim For Relief (Inverse Condemnation – Driveway) were compulsory counterclaims Iliescu failed to raise in an earlier Nevada state court action

arising from the same transaction or occurrence and, therefore, Iliescu is precluded from bringing such claims in this action.

    This motion is supported by the pleadings and papers on file herein, the Points and Authorities filed herewith, the exhibits attached hereto, and such oral argument as the Court may order.

# TABLE OF CONTENTS

**Page(s)**

Table of Authorities ................................................................................................................ 4

List of Exhibits ........................................................................................................................ 6

Memorandum of Points and Authorities ................................................................................ 7

   I. Introduction .................................................................................................................... 7

   II. Facts and Procedural History ....................................................................................... 8

   III. Argument ................................................................................................................... 11

      A. Claim Preclusion Precludes Plaintiffs' First and Second Claims for Relief. ...... 12

         i. The Parties or Their Privies are the Same ............................................................ 13

         ii. The Final Judgment is Valid ................................................................................ 13

         iii. The Federal Action is Based on the Same Claims or Any Part of Them That Were or Could Have Been Brought in the First Case ........................................... 13

      B. Issue Preclusion Precludes Plaintiffs' First and Second Claims for Relief ......... 15

         i. The issue decided in the prior litigation is identical to the issue presented in the current action .................................................................................................... 15

         ii. The Initial Ruling Must Have Been On The Merits And Have Become Final. 16

         iii. The Party Against Whom The Judgment Is Asserted Must Have Been A Party Or In Privity With A Party To The Prior Litigation .............................................. 16

         iv. The Issue Was Actually And Necessarily Litigated ........................................ 16

   IV. Conclusion ................................................................................................................ 18

Woodburn and Wedge
6100 Neil Road, Suite 500
Reno, NV 89511
775-688-3000

# TABLE OF AUTHORITIES

Page(s)

**Federal Statutes**

28 U.S.C. § 1738 .................................................................................................................. 11

42 U.S.C. § 1983 ............................................................................................................. 1, 13

**Federal and State Rules**

Fed. R. Civ. P. 56 ............................................................................................................ 1, 11

Nev. R. Civ. P. 13............................................................................................................ 13, 14

**Cases**

*Adam Bros. Farming v. Cnty. of Santa Barbara*,
   604 F.3d 1142 (9th Cir. 2010)........................................................................................ 15

*Alcantara ex rel. Alcantara v. Wal-Mart Stores, Inc.*,
   130 Nev. 252, 321 P.3d 912 (2014) ............................................................................... 16

*Bushman v. Safeway Stores, Inc.*,
   608 F. Supp. 232 (D. Nev. 1985) ................................................................................... 11

*Exec. Mgmt., Ltd. v. Ticor Title Ins. Co.*,
   114 Nev. 823, 963 P.2d 465 (1998) .......................................................................... 12, 14

*Five Star Capital Corp. v. Ruby,*
   124 Nev. 1048, 194 P.3d 709 (2008) ........................................................................ 12, 15

*Frei v. Goodsell*,
   129 Nev. 403, 305 P.3d 70 (2013) ................................................................................. 16

*Kremer v. Chemical Construction Corp.*,
   456 U.S. 461 (1982) ....................................................................................................... 12

*Kuptz-Blinkinsop v. Blinkinsop*,
   136 Nev. 360, 466 P.3d 1271 (2020) ............................................................................. 12

*Lee v. GNLV Corp.*,
   116 Nev. 424, 996 P.2d 416 (2000) ............................................................................... 13

*Marrese v. American Academy of Orthopaedic Surgeons,*
   470 U.S. 373 (1985) .................................................................................................. 11, 12

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
   475 U.S. 574 (1986) ......................................................................................................... 11

*Parsons Steel, Inc. v. First Ala. Bank,*
   474 U.S. 518 (1986) .................................................................................................. 12, 14

*Scoggin v. Schrunk,*
   522 F.2d 436 (9th Cir.1975) ............................................................................................. 11

*Triton Energy Corp. v. Square D Co.,*
   68 F.3d 1216 (9th Cir, 1995) ............................................................................................ 11

*Univ. of Nev. v. Tarkanian,*
   110 Nev. 581, 879 P.2d 1180 (1994) ................................................................................ 12

*Weddell v. Sharp,*
   131 Nev. 233, 350 P.3d 80 (2015) .................................................................................... 12

**Other Authorities**

Restatement (Second) of Judgments § 27 cmt. d (1982) .................................................... 16

Woodburn and Wedge
6100 Neil Road, Suite 500
Reno, NV 89511
775-688-3000

# LIST OF EXHIBITS

**Exhibit No.**

| | |
|---|---|
| 1. | RTC State Action Complaint |
| 2. | State Action Order Granting Motion for Immediate Occupancy Pending Final Judgment |
| 3. | RTC State Action Motion in Limine to Preclude Evidence or Argument Regarding Unasserted Claims |
| 4. | Declaration of Jeffrey Wilbrecht |
| 5. | State Action Order Granting RTC's Motion in Limine |
| 6. | RTC State Action Motion for Summary Judgment |
| 7. | State Action Order Granting Motion for Summary Judgment |
| 8. | Iliescu Appellate Opening Brief |
| 9. | RTC Appellate Answering Brief |
| 10. | Iliescu Appellate Reply Brief |
| 11. | Nevada Court of Appeals Order of Affirmance |

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. Introduction

Iliescu commenced this action against RTC alleging a wrongful taking of their property for public use without just compensation and asserting claims of inverse condemnation, trespass, and private nuisance. The underlying facts of this action are identical and arise from the same transaction or occurrence that was at issue in the already-litigated case of *RTC Of Washoe Co. Vs John Iliescu Jr Etal*, Case No. CV19-00753, in the Second Judicial District Court of the State of Nevada (Washoe County)(the "State Action"). RTC's complaint in the State Action is attached hereto as **Exhibit 1.**

In the State Action, RTC sought to acquire limited easements on Iliescu's property. However, RTC did not need to exercise eminent domain to eliminate the driveway access to Iliescu's property because that driveway access was already within the public right-of-way. Iliescu failed to assert a counterclaim for inverse condemnation in the State Action, despite the fact that it was obviously a compulsory counterclaim.

After the deadlines to amend the pleadings and disclose experts had passed, Iliescu belatedly attempted to argue they should be entitled to pursue a claim for inverse condemnation as a result of the elimination of the driveway access. However, the district court granted RTC's motion for summary judgment on the issue of the compensation due Iliescu. Iliescu appealed and argued again on appeal that they should be entitled to pursue a claim for inverse condemnation for the elimination of the driveway access. The Nevada Court of Appeals rejected Iliescu's argument and affirmed the District Court's summary judgment in RTC's favor, concluding that Iliescu should have asserted a claim for inverse condemnation regarding the driveway, but failed to do so.

Iliescu now brings this action in a misguided attempt to pursue claims they were required to and failed to pursue in the State Action. The driveway issue, and the Iliescu's failure to assert a compulsory counterclaim, were already litigated in the State Action. Thus, Iliescu's claims regarding the driveway access are barred by res judicata and

summary judgment should be entered in favor of RTC on Iliescu's claims for relief involving the driveway.

## II. Facts and Procedural History

RTC filed its complaint in the State Action on April 3, 2019, seeking to exercise its eminent domain power to acquire certain easements on two adjacent parcels of property owned by Iliescu. *See* Ex. 1. RTC sought to acquire one permanent easement and one temporary construction easement at 961 S. Virginia Street, Reno, Nevada, APN 014-063-11, and a temporary construction easement at 999 S. Virginia Street, Reno, NV, APN 014-063-07. *Id.* at p. 2. RTC sought these easements in furtherance of the Virginia Street Bus RAPID Transit Extension Project. *Id.* The district court found RTC's condemnation was for a public use authorized by law and the taking of the property was necessary for that public use. *See* Order Granting Motion for Immediate Occupancy Pending Final Judgment, attached hereto as **Exhibit 2**. The district court thereby granted the RTC immediate possession and occupancy of the property in exchange for a cash deposit to be held by the court. The only issue left to litigate was the compensation due to Iliescu. *Id.*

In the course of the State Action, RTC **did not** acquire permanent easements or any other permanent property acquisition on APN 014-063-07, a fact noted by the Iliescu's belatedly disclosed expert when he commented on an inverse condemnation claim Iliescu never asserted. Mr. Wren, the Iliescu expert stated: "Though there is no permanent taking indicated, I have been informed that the currant [sic] access to this site from S. Virginia Street will be eliminated in the after condition." *See* Motion in Limine to Preclude Evidence or Argument Regarding Unasserted Claims at p. 2, attached hereto as **Exhibit 3**.

Because Iliescu never asserted an inverse condemnation counterclaim, RTC filed a motion in limine to exclude evidence or argument regarding unasserted claims, as Iliescu's expert valuation relied in large part on the elimination of the driveway access to APN 014-063-07. *Id.* As stated by RTC in its motion in limine, the driveway was within existing public right of way, and RTC was therefore not required to initiate condemnation

proceedings. *Id.*; *see also* Declaration of Jeffrey Wilbrecht, attached hereto as **Exhibit 4**. If Iliescu sought damages for the loss of their alleged property interest when RTC did not exercise its eminent domain power over the driveway, Iliescu was required to assert an inverse condemnation counterclaim. Iliescu failed to oppose RTC's motion in limine and the district court granted it. *See* Order Granting RTC's Motion in Limine, attached hereto as **Exhibit 5.**

Iliescu also failed to timely disclose their expert witness in the State Action. RTC filed a motion for summary judgment on the basis that Iliescu's failure to do so left no way for Iliescu to prove the value of the land taken, and therefore RTC's expert's valuation of the property taken was uncontroverted. *See* RTC Motion for Summary Judgment attached hereto as **Exhibit 6**. The district court granted RTC's motion for summary judgment and found that Iliescu's belatedly disclosed valuation of the property was based upon loss of driveway access to South Virginia Street, and to claim damages on that basis Iliescu should have asserted an inverse condemnation counterclaim. *See* Order Granting Motion for Summary Judgment, attached hereto as **Exhibit 7**. Iliescu appealed the district court's order.

In the appellate proceedings, Iliescu's opening brief expressly listed as an issue "[w]hether the court abused its discretion by granting the Motion in Limine to Preclude Evidence or Argument Regarding Unasserted Claims." *See* Iliescu's Appellate Opening Brief, attached hereto as **Exhibit 8.** The same motion Iliescu did not oppose and in which RTC argued Iliescu's failure to assert an inverse condemnation counterclaim precluded Iliescu from presenting evidence about any loss they may have incurred as a result of loss of driveway access to South Virginia Street. Iliescu then argued they should be allowed to assert the inverse condemnation claim largely on the basis of excusable neglect, and conceded they knowingly failed to oppose RTC's motion in limine to exclude inverse condemnation evidence because Iliescu believed such an opposition would have been futile. Ex. 8 at p. 21.

In its answering brief on appeal, RTC again noted that the removal of a driveway cut that provided access from South Virginia Street to APN 014-063-07 was the basis of Iliescu's claim for additional just compensation even though the cut was within an existing right-of-way, RTC had not used its eminent domain power to take the driveway cut because it was already on an existing right-of-way, and Iliescu had otherwise failed to assert an inverse condemnation counterclaim. *See* RTC's Appellate Answering Brief, attached hereto as **Exhibit 9.** In its answering brief, RTC stated:

> Moreover, in order to recover compensation for the removal of the driveway cut they did not own, Iliescu should have asserted an inverse condemnation claim, which they also failed to do. This was compounded by their failure to oppose RTC's motion to preclude Iliescu from introducing evidence of the unasserted inverse condemnation claim.

Ex. 9 at p. 3-4. In their reply, Iliescu conceded they did not assert an inverse condemnation claim and did not seek leave of the district court to do so. *See* Iliescu Appellate Reply Brief at p. 1, attached hereto as **Exhibit 10.** Iliescu nevertheless argued the district court erred in entering the Order on Unasserted Claims because "it improperly limited the evidence it could consider in the context of an eminent domain action," – even though Iliescu had already conceded they never asserted an inverse condemnation counterclaim. *Id.*

The Nevada Court of Appeals affirmed the district court's order granting summary judgment in favor of RTC. *See* Order of Affirmance, attached hereto as **Exhibit 11**. In its Order of Affirmance, the Court stated:

> Despite their failure to preserve these issues, the Iliescus would nevertheless have us reach their merits based on the constitutional nature of takings claims. While it is true that the general waiver rule may be relaxed to review constitutional issues, the Iliescus did not argue an infringement of their constitutional rights until their reply brief.

Ex. 11 at p. 8 (internal citations omitted).

The reply brief on appeal was filed July 29, 2021. It was only after briefing on the State Action appeal was complete that Iliescu filed the present action on August 27, 2021. The present action is based on the same facts as the State Action – notably the easements

RTC obtained for APNs 014-063-11 and 014-063-07. Additionally, two of Plaintiffs' five claims are directly related to the same driveway and driveway cut that were discussed extensively in the State Action which Iliescu failed to assert through an inverse condemnation counterclaim. Any "driveway" claims in this action clearly arise from the same transaction or occurrence as the State Action—RTC's construction of the South Virginia road improvement project that included the elimination of the driveway access. Therefore, Iliescu's driveway claims are barred by res judicata.

### III.  Argument

Summary judgment is appropriate when "there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The nonmoving party cannot defeat summary judgment merely by demonstrating that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216,1221 (9th Cir, 1995).

A motion for summary judgment can be brought on the basis of res judicata. *See Bushman v. Safeway Stores, Inc.*, 608 F. Supp. 232, 234–35 (D. Nev. 1985). The doctrine of res judicata precludes parties or their privies from relitigating issues which **were or could have** been raised when there has been a final judgment by a court of competent jurisdiction. *Id.* (emphasis added). A state judgment on the merits bars every claim that was raised in state court and also precludes the assertion of every legal theory or ground of recovery that might have been raised in state court supporting the granting of the desired relief. *Scoggin v. Schrunk,* 522 F.2d 436, 437 (9th Cir.1975).

State court judgments have a preclusive effect on subsequent federal actions under the doctrine of res judicata pursuant to the Full Faith and Credit Clause. 28 U.S.C. § 1738. The Full Faith and Credit clause directs a federal court to refer to the preclusion law of that State in which the final judgment was rendered. *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380 (1985). "It has long been established that § 1738 does not allow federal courts to employ their own rules of res judicata in

determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken." *Id.* (quoting *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 481–482, (1982)); *see also Parsons Steel, Inc. v. First Ala. Bank*, 474 U.S. 518, 523 (1986) (stating federal courts "give the same preclusive effect to a state-court judgment as another court of that State would give").

Therefore, this Court should look to the preclusion law of the State of Nevada to determine whether a Nevada state court judgment bars a subsequent action in federal court pursuant to the doctrine of res judicata. Nevada courts' views of res judicata are consistent with those of the federal courts. "The doctrine is intended to prevent multiple litigation causing vexation and expense to the parties and wasted judicial resources by **precluding parties from relitigating issues they could have raised** in a prior action concerning the same controversy." *Univ. of Nev. v. Tarkanian,* 110 Nev. 581, 598, 879 P.2d 1180, 1191 (1994) (emphasis added), *holding modified on other grounds by Exec. Mgmt., Ltd. v. Ticor Title Ins. Co.,* 114 Nev. 823, 963 P.2d 465 (1998). Nevada recognizes claim preclusion and issue preclusion as two distinct res judicata doctrines. *Five Star Capital Corp. v. Ruby,* 124 Nev. 1048, 1054–55, 194 P.3d 709, 713 (2008) (footnotes omitted), *holding modified by Weddell v. Sharp,* 131 Nev. 233, 350 P.3d 80 (2015). The satisfaction of either is grounds to grant summary judgment based on res judicata. *Kuptz-Blinkinsop v. Blinkinsop*, 136 Nev. 360, 364–65, 466 P.3d 1271, 1275 (2020) ("Summary judgment is appropriate when [claim or] issue preclusion bars a claim.").

    A.  <u>Claim Preclusion Precludes Plaintiffs' First and Second Claims for Relief.</u>

Nevada's three-part test for claim preclusion is: "(1) the parties or their privies are the same, (2) the final judgment is valid, and (3) the subsequent action is based on the same claims or any part of them that were **or could have been brought in the first case**." *Five Star Capital Corp.,* 124 Nev. at 1054, 194 P.3d at 713 (emphasis added).

### i. The Parties or Their Privies are the Same

The parties in the State Action and present action, with the exception of the City of Reno which filed a disclaimer of interest in the State Action on April 11, 2019, are the same. Plaintiffs here were defendants in the State Action, and RTC was the plaintiff in the State Action. This element is therefore satisfied.

### ii. The Final Judgment is Valid

Nevada courts treat summary judgment orders as final judgments. *See Lee v. GNLV Corp.*, 116 Nev. 424, 428, 996 P.2d 416, 418 (2000). Here, RTC prevailed in the State Action by a summary judgment order that disposed of all the remaining issues in the case, particularly the issue of just compensation. Ex. 7, at p. 9. Iliescu thereafter appealed that same order, further evidencing it was a final judgment. The second element for claim preclusion is met.

### iii. The Federal Action is Based on the Same Claims or Any Part of Them That Were or Could Have Been Brought in the First Case.

A plain reading of the complaints in this case and the State Action shows that both cases deal with RTC's condemnation proceedings wherein it acquired one permanent easement and one temporary construction easement at 961 S. Virginia Street, Reno, Nevada, APN 014-063-11, and a temporary construction easement at 999 S. Virginia Street, Reno, NV, APN 014-063-07. Plaintiffs' present complaint alleges two related claims to the loss of the driveway for APN 014-063-07, which was discussed in pleadings and orders in the State Action. *See* Exhibits 3, 7.

Not only could the Plaintiffs have asserted their 42 U.S.C. § 1983 and Inverse Condemnation claims as counterclaims in the State Action, they were *required* to do so. NRCP 13(a) states:

> (a) **Compulsory Counterclaim.**
> (1) **In General.**  A pleading **must** state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim:
> (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and

>  (B) does not require adding another party over whom the court cannot acquire jurisdiction.

NRCP 13(a) (emphasis added). The Nevada Supreme Court has previously held a court properly dismissed claims when a defendant failed to assert them as counterclaims pursuant to NRCP 13(a), noting the rule is intended to "make an 'actor' of the defendant so that circuity of action is discouraged and the speedy settlement of all controversies between the parties can be accomplished in one action." *Exec. Mgmt., Ltd. v. Ticor Title Ins. Co.*, 114 Nev. 823, 842–43, 963 P.2d 465, 478 (1998) (internal quotes omitted).

Here, Iliescu knew what easements RTC was seeking in the State Action and how the Virginia Street Bus RAPID Transit Extension Project would affect their property. Plaintiffs conceded they did not assert an inverse condemnation claim for the driveway nor sought leave from the state court to do so. Ex. 10 at p. 1. When RTC filed a motion in limine to preclude evidence or testimony of unasserted claims, namely the inverse condemnation counterclaim related to the driveway, Iliescu did not oppose. Instead, they attempted to argue policy reasons on appeal as to why their failure to assert an inverse condemnation counterclaim should not preclude them from doing so at a later time. *Id.*

It is clear that the taking and inverse condemnation claims related to the driveway were compulsory counterclaims because they arose out of the same transaction or occurrence of the State Action, and no additional parties were necessary to assert the counterclaim. The operative facts of Iliescu's current complaint are the same facts that were the basis of the State Action. Iliescu's failure to assert and litigate claims as to the driveway during the proceeding of the State Action precludes Plaintiffs from now raising the driveway claims. If Plaintiffs had filed their present complaint in a Nevada state court disputing the same property and driveway, the same condemnation action, and the same easements that were the subject of the State Action, their claims would be barred by res judicata. The result is no different here, as federal courts give the same preclusive effect as a state court would give. *See Parsons Steel, Inc. supra,* at 523. Thus, the third element of claim preclusion applies, and Plaintiffs' First and Second claims for relief are barred by res judicata.

To the extent that Plaintiffs argue they could not have, or were not required to bring inverse condemnation claims in state court because of their constitutional nature, such an argument fails. The inverse condemnation claim was still compulsory because it arose out of the same transaction or occurrence at issue in the State Action and the court had jurisdiction over RTC, and it is well-established that state courts are fully competent to hear federal claims, including constitutional challenges. *See Adam Bros. Farming v. Cnty. of Santa Barbara*, 604 F.3d 1142, 1148 (9th Cir. 2010).

B. <u>Issue Preclusion Precludes Plaintiffs' First and Second Claims for Relief.</u>

Issue preclusion applies when (1) the issue decided in the prior litigation is identical to the issue presented in the current action; (2) the initial ruling must have been on the merits and have become final; (3) the party against whom the judgment is asserted must have been a party or in privity with a party to the prior litigation; and (4) the issue was actually and necessarily litigated. *Five Star Cap. Corp.*, 124 Nev. at 1055, 194 P.3d at 713.

    i. *The issue decided in the prior litigation is identical to the issue presented in the current action.*

It is apparent by Iliescu's own complaint that their driveway claims are barred by res judicata. Iliescu's first claim states the "Defendant did not provide just compensation to Iliescu for the taking of their property. The Defendant deprived Iliescu of their constitutional right to just compensation for the taking of their private property." The issue of just compensation is the precise issue decided by the state court. In its order granting summary judgment in favor of RTC, the court noted "[t]he parties agree the only remaining fact in dispute in this case is the amount of just compensation due to Defendants for Plaintiff's acquisition of the property and any severance damages." Ex. 7 at p. 5. The court then expressly "ORDERED that the amount of just compensation due to Defendants John Iliescu, Jr. and Sonnia Iliescu, Trustees of The John Iliescu Jr. and Sonnia Iliescu 1992 Family Trust Agreement is $15,955." *Id.* at p. 9. The issue of just

compensation Plaintiffs raise in their first claim for relief is identical to that in the State Action, both pertaining to the exact same condemnation proceedings.

Iliescu's second claim for relief asserting inverse condemnation of the driveway is also identical to issues presented in the State Action. RTC expressly litigated whether Iliescu could present inverse condemnation evidence related to the driveway in its Motion in Limine to Preclude Evidence of Argument Regarding Unasserted Claims. *See* Ex. 3. Iliescu failed to oppose RTC's motion. The state court's order granting RTC's motion for summary judgment was based in part on the preclusion of testimony related to the unasserted inverse condemnation claims. Ex. 7 at p. 7.

The first element of claim preclusion is met as to Plaintiffs' first two claims for relief.

*ii. The Initial Ruling Must Have Been On The Merits And Have Become Final.*

As discussed *supra*, summary judgment orders are treated as final judgments in Nevada. Further, the issues related to the driveway, including whether there was a taking or inverse condemnation, was decided on the merits. The court expressly discussed and considered Iliescu's expert report which was based on the elimination of access to South Virginia Street on parcel APN 014-063-07 (the driveway), and RTC's contention that the driveway access way was public right of way. Ex. 7 at p. 7.

The court reached a decision on the merits, finding "[Iliescu] failed to produce evidence that would prove the value of the land taken . . . and will be unable to carry their burden to prove the same." *Id.* at p. 8. This decision on the merits precludes Plaintiffs' claims regarding the driveway here and the second element of issue preclusion is satisfied.

*iii.  The Party Against Whom The Judgment Is Asserted Must Have Been A Party Or In Privity With A Party To The Prior Litigation.*

Both RTC and Iliescu were parties to the State Action. This element is satisfied.

*iv.  The Issue Was Actually And Necessarily Litigated*

"When an issue is properly raised . . . and is submitted for determination . . . the issue is actually litigated." *Frei v. Goodsell*, 129 Nev. 403, 407, 305 P.3d 70, 72 (2013)

(quoting Restatement (Second) of Judgments § 27 cmt. d (1982)). Whether the issue was necessarily litigated turns on whether the common issue was necessary to the judgment in the earlier suit. *Alcantara ex rel. Alcantara v. Wal-Mart Stores, Inc.*, 130 Nev. 252, 262, 321 P.3d 912, 918 (2014).

The issues of an alleged taking of the driveway or inverse condemnation of the driveway were actually and necessarily litigated. In the district court, RTC properly brought a motion in limine in which it raised the issue about Iliescu's failure to assert an inverse condemnation counterclaim for the driveway. Ex. 3. RTC briefed why there was no taking of the driveway as it was a public right of way. *Id.; see also* Ex. 4. It was Iliescu's own decision to not oppose RTC's motion. Ex. 8 at p. 21. The Court considered the issue of the driveway and RTC's arguments regarding the Iliescu's failure to assert an inverse condemnation counterclaim in the order granting summary judgment. Ex. 7 at p. 7. The driveway issues and Iliescu's obligation to assert an inverse condemnation claim also composed a significant portion of the appellate briefing, wherein Iliescu argued the district court abused its discretion by precluding Iliescu from introducing inverse condemnation claims even though Iliescu failed to assert such compulsory counterclaim and willingly failed to oppose RTC's motion in limine to exclude such evidence. The Nevada Court of Appeals held the district court did not err in precluding Iliescu from introduction such evidence.

Furthermore, the common issues here were necessary to the judgment in the State Action. If a material issue of fact remained as to a taking of the driveway or inverse condemnation claim, the court may have granted partial summary judgment or denied RTC's motion altogether. Instead, the court determined such unasserted claims did not create a material issue of fact to preclude summary judgment. Similarly, the court could not have ordered $15,955 to be the amount of just compensation as it did without considering the driveway issues Iliescu now assert, because Iliescu's expert opined a greater value for the property based on the unasserted inverse condemnation counterclaims. Ex. 7 at p. 7, 9.

Either claim preclusion or issue preclusion alone are enough for the court to grant summary judgment based on res judicata. Both doctrines are satisfied here.

### IV. CONCLUSION

There is no genuine dispute of material fact and RTC is entitled to judgment as a matter of law as to Iliescu's first and second claims for relief. Such claims are barred by Nevada's doctrine and application of res judicata. Iliescu could have, and was *required* to assert the first and second claims for relief in the present complaint in the State Action. They did not do so as required, and summary judgment should therefore be granted in favor of RTC.

**Affirmation pursuant to NRS 239B.030**

The undersigned does hereby affirm that the preceding document does not contain the personal information of any person.

DATED: August 12, 2022

                                    WOODBURN AND WEDGE

By:   /s/ Dane W. Anderson
       Dane W. Anderson, Esq. [NSB 6883]
       Jose A. Tafoya, Esq. [NSB 16011]
       6100 Neil Road, Suite 500
       Reno, Nevada 89511
       Telephone: 775-688-3000
       danderson@woodburnandwedge.com
       jtafoya@woodburnandwedge.com

*Attorneys for Defendant*

# CERTIFICATE OF SERVICE

I certify that I am an employee of WOODBURN AND WEDGE and that on this date, pursuant to FRCP 5(b), I am serving a true and correct copy of the document titled **RTC's MOTION FOR PARTIAL SUMMARY JUDGMENT** on the parties set forth below by E-service effected by CM/ECF to:

Donald Lattin, Esq.
Carolyn Renner, Esq.
MAUPIN, COX & LEGOY
4785 Caughlin Parkway
Reno, Nevada 89519
dlattin@mcllawfirm.com
crenner@mcllawfirm.com

*Attorneys for Plaintiffs*

DATED: August 12, 2022.

/s/ Jennifer Heston
Employee of Woodburn and Wedge

-19-