UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| JOHN ILIESCU, JR., AND SONNIA ILIESCU, TRUSTEES OF THE JOHN ILIESCU, JR. AND SONNIA ILIESCU 1992 FAMILY TRUST AGREEMENT DATED JANUARY 24,1992, | Case No. 3:21-cv-00387-ART-CLB |
| Plaintiffs, | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| THE REGIONAL TRANSPORTATION COMMISSION OF WASHOE COUNTY, A SPECIAL UNITOF THE GOVERNMENT; AND DOES I THROUGH X INCLUSIVE, | |
| Defendant. | |

I.  **SUMMARY**

This federal action arises from underlying state litigation between Plaintiffs John Iliescu Jr. and Sonnia Iliescu (the "Iliescus") and Defendant The Regional Transportation Commission of Washoe County ("RTC"). In essence, the Iliescus argue that the value of their Property (Washoe County Assessor Parcel Number 014-063-07; the "Property") was diminished when RTC removed a driveway that connected the Property to South Virginia Street as part of a rapid transit project, and that they never received proper notice that the driveway would be removed. Thus, despite the fact that the effect of RTC's project on the value of the Property was extensively litigated in state court, the Iliescus argue that the impact of the driveway's removal on the value of their Property was never litigated. In response, RTC argues that the reason the alleged diminution in value of the Property due

to the driveway's removal was not expressly litigated in the state action was because the Iliescus failed to oppose motions in limine and failed to bring counterclaims for taking and inverse condemnation. Therefore, RTC avers, the Iliescus' claims are barred by the doctrines of claim and issue preclusion because they could have been, but were not, brought in the state action.

Before the Court is RTC's Motion for Partial Summary Judgment. (ECF No. 33). For the reasons discussed herein, the Court grants RTC's Motion in full.

## II.   BACKGROUND

On December 4, 2018, RTC mailed an appraisal report discussing the Property to the Iliescus. (*See* ECF Nos. 41 at 7; 41-4 at 2). Sonnia Iliescu signed a certified mail receipt on December 7, 2018, indicating receipt of the appraisal report. (ECF No. 41-4 at 10-11). The appraisal report explained that "[i]n the after condition [the Property] will lose access to one of the driveways located along South Virginia Street." (ECF No. 41-3 at 12). The appraisal report included an aerial photograph that indicated one driveway to the Property would be eliminated in the after condition, as signified by a red arrow. (*Id.* at 13).

On January 22, 2019, RTC sent a letter via hand-delivery notifying the Iliescus that the RTC Board would meet on February 15, 2019, to consider acquiring a permanent easement on a parcel not at issue in this litigation, and a temporary construction easement upon the Property. (ECF Nos. 33-1 at 3-4; 37-1 at 2).

On February 15, 2019, the Iliescus attended the RTC Board Meeting they received notice of in the January 22, 2019 letter. (ECF No. 41-1 at 13). The Iliescus explained to the Board that they were "very concerned about permanently losing Virginia Street access to one of their parcels because then the only entry access would be from the alley." (*Id.*) Dale Ferguson, RTC Chief Legal Counsel explained that "the area in question will be permanently blocked as per the design of the project." (*Id.*) At this meeting, RTC adopted a "Resolution of Condemnation"

2

1  authorizing its counsel to commence condemnation proceedings to acquire the
2  easements via eminent domain. (ECF Nos. 33-1 at 4; 41-1 at 14).

3       RTC sued the Iliescus in state court on April 3, 2019, seeking a temporary
4  construction easement on the Property in addition to a permanent easement and
5  a temporary construction easement on another parcel. (*RTC of Washoe Cty. V.*
6  *John Iliescu Jr. et al.*, Case No. CV19-00753 in the Second Judicial District Court
7  of the State of Nevada (Washoe County) (the "State Action"))

8       On May 2, 2019, the Iliescus filed their Answer, in which they asserted no
9  counterclaims, *pro se*. (ECF No. 37-2).

10       One day later, on May 3, 2019, the Iliescus wrote a letter to Diane Kelling,
11  a legal assistant at RTC's counsel explaining their frustration regarding RTC's
12  intention to remove the driveway. (ECF No. 41-2 at 2). The Iliescus wrote
13  "[n]owhere in any of the documents that we have received have [RTC] ever
14  addressed the fact that they are taking away the only ingress and egress from
15  Virginia Street onto [the Property] and they state that future access to that parcel
16  will be in the alley at the rear of the property." (*Id.*) The Iliescus continued,
17  "[p]lease review the initial proposal sent to us which points out *very clearly* the
18  permanent taking of the ingress-egress to [the Property]." (*Id.*) (emphasis added).
19  The Iliescus attached a facsimile of the same aerial photograph that was included
20  in the appraisal report—which the Iliescus received on December 7, 2018—to
21  their letter. (*Compare* ECF No. 41-2 at 3 *with* ECF No. 41-3 at 13).

22       In this federal litigation, John and Sonnia Iliescu each filed declarations
23  under penalty of perjury attesting that they did not know RTC intended to remove
24  the driveway access to the Property until after the Iliescus filed their answer on
25  May 2, 2019. (*See* ECF Nos. 37-3 at 3; 37-4 at 2).

26       During the State Action, the parties participated in a case conference and
27  submitted a joint conference report. (ECF No. 33-11 at 3). The report set the final
28  date to amend pleadings and the final date for initial disclosures of expert

witnesses as February 7, 2020. The report set the final date for disclosures of rebuttal expert witnesses as March 9, 2020, and the parties further agreed that discovery would close on May 8, 2020. (*Id.*) The district court incorporated these dates into its scheduling order. (*Id.*)

The Iliescus failed to disclose their expert witness by the February 7, 2020 deadline. RTC subsequently brought a motion in limine seeking to preclude the Iliescus from calling an expert witness at trial (hereinafter "motion in limine re expert witness"). In opposing this motion in limine, the Iliescus argued that their counsel had suffered an accidental fall and subsequently missed the expert disclosure deadline. (*Id.* at 3-4). The Iliescus requested a 21-day extension in their opposition, and subsequently requested a 45-day extension in a second opposition. (ECF No. 33-11 at 4).

The Iliescus failed to disclose their expert witness by the deadline imposed through their own motion for a 45-day extension of the expert disclosure deadline. (*Id.*) RTC filed a supplemental reply in its support of its motion in limine re expert witness arguing that the Iliescus' failure to meet their own deadline meant that the Iliescus should be prohibited from disclosing an expert even if the district court granted the Iliescus' request for an extension. (*Id.*) The Iliescus did not object to RTC's supplemental filing. (*Id.*)

While RTC's motion in limine re expert witness was pending, RTC filed a motion for summary judgment, arguing that the Iliescus had the burden of proving damages to the Property and that they had no way to do so without an expert witness. (*Id.* at 5).

The district court subsequently granted-in-part and denied-in-part RTC's motion in limine re expert witness. Importantly, the court denied the Iliescus' extension request as moot because the Iliescus failed to disclose their expert witness within their own proposed 45-day extension. The court's ruling on the motion in limine re expert witness barred the Iliescus from disclosing and

presenting an initial expert witness in the case. (ECF No. 33-11 at 5). At the same time, the court extended the rebuttal expert deadline to May 22, 2020. (*Id.*)

While its motion for summary judgment was pending, RTC brought three additional motions in limine. (*Id.*) First, RTC brought a motion in limine requesting the court preclude the Iliescus from calling witnesses or presenting evidence at trial (hereinafter motion in limine re evidence) after the Iliescus made no disclosures under NRCP 16.1(a)(1). The district court granted this motion in limine after the Iliescus failed to oppose it. (*Id.* at 5-6). Second, RTC brought a motion in limine to prevent the Iliescus from offering any rebuttal experts in the case (hereinafter motion in limine re rebuttal). The Iliescus did not timely oppose the motion. (*Id.* at 6). When the district court granted RTC's motion for summary judgment, it held that RTC's motion in limine re rebuttal was moot. (*Id.*) Third, RTC filed a motion in limine to prevent the Iliescus from offering testimony relating to inverse condemnation, a claim that the Iliescus had never asserted (hereinafter motion in limine re inverse condemnation). (ECF No. 33-11 at 6). The Iliescus' rebuttal expert, Anthony Wren ("Wren") concluded in his expert report that the elimination of the driveway from South Virginia Street to the Property would diminish the value of the Property by $162,500. (*Id.*) The RTC argued that this diminution in value could only be proven by a theory of inverse condemnation, which the Iliescus never asserted. (*Id.*) The Iliescus failed to oppose the motion in limine re inverse condemnation, and the district court accordingly granted it. (*Id.* at 7).

In August 2020, the district court granted RTC's motion for summary judgment. (ECF No. 33-7). The district court found that the Iliescus' notice of a rebuttal expert "attempts to repackage Mr. Wren's initial expert report as a rebuttal expert report, but the actual report attached to the Summary Judgment Opposition is very clearly an initial expert report as it doesn't mention Plaintiff's expert report. . . . Further, this Court is persuaded by [RTC's] argument that Mr.

Wren's evaluation is based upon the loss of access to South Virginia Street and to claim damages on that basis [the Iliescus] would have needed to assert a counterclaim for inverse condemnation. Defendants have asserted no such counterclaim and the time for doing so has passed." (*Id.* at 9). The district court granted RTC's motion for summary judgment because the Iliescus were precluded from presenting evidence at trial due to their failure to oppose RTC's motion in limine re evidence, and because the Iliescus "have failed to provide a proper rebuttal expert witness report." (*Id.*) The district court found that the amount of just compensation due to the Iliescus was $15,995. (*Id.* at 10).

The Iliescus appealed the district court's decision to the Nevada Court of Appeals. On October 21, 2021, the Court of Appeals upheld the district court's decision in full. (ECF No. 33-11 at 14).

On August 27, 2021, the Iliescus initiated this action in federal court. (ECF No. 4). The Iliescus bring five claims against RTC: 1) a takings claim under 42 U.S.C. § 1983 relating to the elimination of the driveway between the Property and South Virginia Street; 2) an inverse condemnation claim relating to the driveway; 3) an inverse condemnation claim relating to a drain that RTC placed on the Property; 4) a trespass claim based on water, leaves, and garbage flowing onto the Property as the result of a drain that RTC placed on the property; and 5) a private nuisance claim also based on the drain.

RTC filed its Motion for Partial Summary Judgment on August 12, 2022, seeking judgment on the Iliescus' first two claims relating to the driveway. (ECF No. 33 at 1). RTC argues that claim preclusion and issue preclusion both preclude the Iliescus' first and second claims for relief as, RTC argues, the Iliescus could have brought the takings and inverse condemnation claims relating to the driveway as counterclaims in the State Action. (ECF No. 33 at 12, 15).

The Court agrees with RTC that the Iliescus' first and second claims for relief are precluded under the doctrine of claim preclusion and grants RTC's Partial Motion for Summary Judgment (ECF No. 33) on that basis.

## III.    LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *See Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986) (citation omitted).

The moving party bears the burden of showing that there are no genuine issues of material fact. *See Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving

7

party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient[.]" *Anderson*, 477 U.S. at 252.

When determining the preclusive effect of state judgments, federal courts look to the preclusion law of that state in which the final judgment was rendered. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985).

Nevada law concerning res judicata is consistent with federal law. "The doctrine is intended to prevent multiple litigation causing vexation and expense to the parties and wasted judicial resources by *precluding parties from relitigating issues they could have raised* in a prior action concerning the same controversy." *Univ. of Nev. v. Tarkanian,* 110 Nev. 581, 598, 879 P.2d 1180, 1191 (1994) (emphasis added), *holding modified on other grounds by Exec. Mgmt., Ltd. v. Ticor Title Ins. Co.,* 114 Nev. 823, 963 P.2d 465 (1998).

Satisfying either claim or issue preclusion will suffice to grant summary judgment. *Kuptz-Blinkinsop v. Blinkinsop*, 136 Nev. 360, 364–65, 466 P.3d 1271, 1275 (2020) ("Summary judgment is appropriate when [claim or] issue preclusion bars a claim.") (alteration in original).

## IV.   DISCUSSION

RTC seeks summary judgment on the Iliescus' first and second claims: a takings claim under 42 U.S.C. § 1983 relating to the elimination of the driveway between the Property and South Virginia Street; and an inverse condemnation claim relating to the driveway. (ECF No. 33 at 1-2). At oral argument, the Iliescus conceded that these counterclaims could have been brought in the

underlying action. The district court also found that the Iliescus would have needed to assert a counterclaim for inverse condemnation to claim damages based on the loss of access to South Virginia Street from the Property. (ECF No. 33-7 at 9). Plaintiffs do not bear the burden of alerting defendants to applicable counterclaims. The State Action was the time and place to make the arguments that the Iliescus now offer here.

In Nevada, the elements for claim preclusion are: "(1) the parties or their privies are the same, (2) the final judgment is valid, and (3) the subsequent action is based on the same claims or any part of them that were *or could have been brought in the first case.*" *Five Star Capital Corp.,* 124 Nev. at 1054, 194 P.3d at 713 (emphasis added).

Here, all three of these elements are met. First, the parties are the same. Second, the final judgment is valid, as Nevada courts treat summary judgment orders as final judgments and there was a final judgment in the underlying state action, which was then appealed and affirmed in its entirety. *See Lee v. GNLV Corp.*, 116 Nev. 424, 428, 996 P.2d 416, 418 (2000). Third, the taking and inverse condemnation actions could have been brought as counterclaims in the underlying state proceeding, and the Iliescus failed to assert these claims.

In their opening brief before the Nevada Supreme Court, the Iliescus conceded that they neither asserted an inverse condemnation claim for the driveway, nor sought leave from the state court to assert such a claim. (ECF No. 33-10 at 5). In this action, the Iliescus also concede that they did not assert an inverse condemnation claim for the driveway in the state action. (ECF No. 37 at 6).

The Iliescus argue that their failure to assert the inverse condemnation and takings counterclaims in the State Action is not fatal on two alternative grounds: under the after-acquired claim exception to the compulsory counterclaim rule, or based on equitable exceptions to the doctrine of claim

preclusion in the Restatement (Second) of Judgments. (ECF No. 37 at 11-13). The Court addresses each argument in turn.

### A.    The claims at issue were compulsory.

The question before the Court is whether the takings and inverse condemnation claims were compulsory or fit the after-acquired claim exception to the compulsory counterclaim rule. NRCP 13(a), which governs compulsory counterclaims, provides as follows:

> (1) In General. A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim:
>> a. Arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and
>> b. Does not require adding another party over whom the court cannot acquire jurisdiction.

NRCP 13(a). Here, the takings and inverse condemnation claims unquestionably arose out of the transaction or occurrence that is the subject matter of the opposing party's claims and did not require adding an additional party over whom the state court could not acquire jurisdiction.

The after-acquired exception allows a party a chance to litigate what would have been a compulsory claim if they did not know about the claim in time to plead it. In Nevada "[a]n after-acquired claim, even if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim, need not be pleaded supplementally; the after-acquired claim is not considered a compulsory counterclaim under Rule 13(a) and a failure to interpose it will not bar its assertion in a later suit." *Mendenhall v. Tassinari*, 133 Nev. 614, 622, 403 P.3d 364, 371 (2017). "When a party does not know of a claim until after its pleading, it constitutes an after-acquired claim." *Id.* (quoting *Loveland Essential Grp., LLC v. Grommon Farms, Inc.*, 318 P.3d 6, 11, 14 (Colo. App. 2012). A "claim is not an 'after-arising claim' if the lack of knowledge was due to their own negligence or lack of reasonable diligence." *Id.*

10

The Iliescus argue that "[a]t the time its Answer was filed, Iliescu had no knowledge of RTC's intention to eliminate the driveway. . . ." (ECF No. 37 at 11). The Iliescus further argue that their lack of knowledge about the driveway was not due to negligence or a lack of reasonable diligence because RTC did not include the driveway in its description of the property over which RTC planned to exercise eminent domain. This argument is not supported by the record which shows that the Illiescus knew about RTC's intention to remove the driveway but failed to litigate available takings and inverse condemnation claims.

The Iliescus knew about their takings and inverse condemnation claims months before they filed their Answer in the state court action. The Iliescus attended a February 15, 2019 RTC Board Meeting, and noted their concerns about permanently losing Virginia Street access to the Property. They were told that the area in question would be permanently blocked as per the design of the project. (ECF No. 41-1 at 13-14). This shows that Iliescus knew about RTC's intention to permanently remove a driveway between South Virginia Street and the Property about two months prior to RTC filing the state action on April 3, 2019, and about three months prior to their filing the Answer on May 2, 2019. In a letter dated the following day, on May 3, 2019 (ECF No. 41-2 at 3), the Iliescus wrote to RTC's counsel expressing concern over the driveway's elimination and included a picture from the RTC's December 7, 2018, report indicating the driveway's removal. (*Compare* ECF No. 41-2 at 3 *with* ECF No. 41-3 at 13). Because the Iliescus knew about their counterclaims when they filed their Answer in state court, the after-acquired claim exception does not apply.

Even accepting at face value the Iliescus' argument that they had no knowledge of RTC's intention to remove the driveway at the time they filed their Answer, any lack of knowledge was plainly "due to their own negligence or lack

11

of reasonable diligence." *Mendenhall*, 403 P.3d at 371. As the Iliescus themselves explained, the "initial proposal sent to us [on December 7, 2018] . . . points out *very clearly* the permanent taking of the ingress-egress to [the Property]." (ECF No. 41-2 at 2) (emphasis added). The Iliescus then attended a RTC Board Meeting on February 15, 2019 where they expressed their concerns about the removal of the driveway and were told that the "area in question would be permanently blocked as per the design of the project." (ECF No. 41-1 at 13). The Iliescus clearly had constructive—if not actual—knowledge of RTC's intent to eliminate the driveway in question months before they filed their Answer on May 2, 2019. The after-acquired claim exception therefore does not apply. Accordingly, the Court finds that the claims at issue here were compulsory under NRCP 13(a) and that claim preclusion applies. Therefore, the Court grants RTC's Motion for Partial Summary Judgment (ECF No. 33) on that basis.

### B.   The equitable exceptions raised are inapplicable here.

For the sake of completeness, the Court discusses the equitable Restatement exceptions the Iliescus raise in their Response (ECF No. 37) to RTC's Partial Motion for Summary Judgment. (ECF No. 33).

First, the Iliescus argue that the inverse condemnation and takings claims falls into the equitable exception enumerated in § 26(1)(d) of the Restatement (Second) of Judgments, which permits a second claim to be brought where "the judgment in the first action was plainly inconsistent with the fair and equitable implementation of a statutory or constitutional scheme." (ECF No. 37 at 13). Comment e on § 26(1)(d) of the Restatement (Second) of Judgments explains that a second action is permissible when "[t]he adjudication of a particular action may in retrospect may appear to create such inequities in the context of a statutory scheme as a whole that a second action to correct the inequity may be called for even though it would normally be

precluded as arising upon the same claim." Restatement (Second) of Judgments § 26 cmt. e (1982).

As support for the application of the exception set out in § 26(1)(d), the Iliescus focus on the state court's refusal to allow the Iliescus to "introduce the wide variety of factors diminishing the value of its property. . . ." (*Id.*). As the Nevada Court of Appeals noted, however, the state district court precluded evidence of their claims because the Iliescus failed to disclose an expert witness by both the court-imposed deadline and the Iliescus' own suggested deadline. The district court accordingly barred them from disclosing an initial expert in the case, and the Iliescus did not request the district court reconsider its ruling to deny them an initial expert.

The Iliescus also failed to oppose the RTC's motions in limine to preclude the Iliescus from presenting any testimony or argument related to inverse condemnation, which the Iliescus admit they never asserted in the state action. RTC brought this motion in limine because the Iliescus' rebuttal expert, Anthony Wren, acknowledged in his report that there was no permanent taking as to the Property, but estimated damages in the amount of $162,500 resulting from the removal of the driveway. (ECF No. 33-11 at 6). RTC argued that these damages could only be arrived at through inverse condemnation in a motion in limine, which the Iliescus failed to oppose. The state district court judge found that motion in limine moot, but opined that "this Court is persuaded by Plaintiff's argument that Mr. Wren's evaluation is based upon the loss of access to South Virginia Street and to claim damages on that basis Defendants would have needed to assert a counterclaim for inverse condemnation. Defendants have asserted no such counterclaim and the time for doing so has passed." (ECF No. 33-7 at 9).

The state court's refusal to allow the Iliescus to present evidence related to the diminution in value of their property was entirely due to the Iliescus' *own*

13

*conduct* in the litigation. Therefore, the state court's judgment was not "plainly inconsistent with the fair and equitable implementation of a statutory or constitutional scheme."

Second, the Iliescus argue that the inverse condemnation claim falls into the equitable exception enumerated in § 26(1)(e) of the Restatement (Second) of Judgements where "[f]or reasons of substantive policy in a case involving a continuing or recurring wrong, the plaintiff is given an option to sue once for the total harm, both past and prospective, or to sue from time to time for the damages incurred to the date of suit, and chooses the latter course . . . ." Restatement (Second) of Judgments § 26(e) (1982).

The Iliescus argue that § 26(1)(e) applies because the Iliescus "have suffered the ongoing economic harm of being deprived of just compensation." (ECF No. 37 at 13). This misstates the history of this case. The Iliescus sued once for the total harm resulting from RTC's activities, were awarded $15,955 in the State Action, and the Nevada Court of Appeals upheld the district court. As discussed, the Iliescus were not permitted to submit their own evidence regarding the impact on the value of the Property caused by the removal of the driveway due to their own legal mistakes in the state action. This situation is unlike those discussed in the comments to § 26(1)(e) because the only claims based on *ongoing* issues are related to the drain RTC installed during the project, and claims involving that drain are not the subject of RTC's Partial Motion for Summary Judgment. (ECF No. 33).

In sum, neither equitable exception for circumventing claim preclusion applies because the Iliescus were aware of their takings and inverse condemnation claims before the state action was filed and failed to plead or effectively pursue them.

//

//

14

1

## V.    CONCLUSION

2

The Court notes that the parties made several arguments and cited to

3

several cases not discussed above. The Court has reviewed these arguments and

4

cases and determines that they do not warrant discussion as they do not affect

5

the outcome of the motion before the Court.

6

For the foregoing reasons, the Court hereby grants Defendant Regional

7

Transportation Commission of Washoe County's Motion for Partial Summary

8

Judgment (ECF No. 33).

9

It is so ordered.

10

DATED THIS 13th Day of June, 2023.

11

12

13

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28